Ryan B. Abbott (SBN 281641)
ryan@bnsklaw.com
Timothy G. Lamoureux (SBN 294048)
tim@bnsklaw.com
**BROWN NERI SMITH & KHAN LLP**
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Telephone: (310) 593-9890
Facsimile: (310) 593-9980

*Attorneys for Plaintiff Suryast U.S. Enterprises, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SURYAST U.S. ENTERPRISES, LLC, a California limited liability company,<br><br>*Plaintiff*,<br><br>v.<br><br>SHIRA PERLMUTTER, in her official capacity as Register of Copyrights and Director of the United States Copyright Office; and THE UNITED STATES COPYRIGHT OFFICE,<br><br>*Defendants*. | Case No.: 2:26-cv-04999-MWF-MAR<br>**FIRST AMENDED COMPLAINT** |

Plaintiff Suryast U.S. Enterprises, LLC ("Suryast LLC") files this First Amended Complaint ("Complaint") against Defendants Shira Perlmutter, in her official capacity as Register of Copyrights and Director of the United States Copyright Office ("Register") and the United States Copyright Office ("Copyright Office") (collectively, "Defendants"), and shows as follows:

## NATURE OF SUIT

1. Ankit Sahni ("Author" or "Sahni") created the original, two-dimensional digital artwork titled "Suryast," reproduced below ("Work"):



2. The Author created the Work by taking an original photograph of a sunset over a building and then using an artificial intelligence application, the RAGHAV Artificial Intelligence Painting App ("RAGHAV"), to render his photograph in a painting style that he selected, at a degree of stylization that he selected.

3. The Author applied to register the Work with the Copyright Office, naming himself as author and as the sole copyright claimant, and disclosing in the application itself that the Work had been created with the assistance of RAGHAV.

4. In a final agency action ("Final Refusal"), the Copyright Office denied registration, deciding that the Work is a derivative work of the Author's own photograph and that the "Work is not the product of human authorship."

5. This denial rests on the Copyright Office's Human Authorship Requirement and its related guidance on works containing material generated by artificial intelligence, which together operate as a *per se* rule against registration of works, or portions of works, that a human author creates using an AI tool, regardless of the creative control the human author exercised. That rule is contrary to the text, history, and purpose of the Copyright Act and to the constitutional mandate to "promote the Progress of Science and useful Arts." U.S. Const. art. I, § 8, cl. 8.

6. The Author then assigned to Suryast LLC, by a signed written agreement, all of his right, title, and interest in and to the Work, including the copyright, all of the exclusive rights under 17 U.S.C. § 106, and the right to register the Work with the Copyright Office. Suryast LLC is now the sole owner of the Work and the real party in interest, and the Copyright Office's refusal to register the Work injures Suryast LLC by depriving it of registration and the legal benefits that registration confers.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 1361, and 2201–02, and 5 U.S.C. §§ 701–06, because this action arises under the Copyright Clause of the United States Constitution and the Copyright Act, Title 17 of the United States Code; seeks review under the Administrative Procedure Act ("APA") of a final agency action of the Copyright Office, which 17 U.S.C. § 701(e) makes subject to the APA; and seeks declaratory and injunctive relief against a federal agency and a federal official sued in her official capacity. The United States has waived sovereign immunity for this action. 5 U.S.C. § 702.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1)(C) because Suryast LLC resides in this District and no real property is involved in this action.

**PARTIES**

9. Plaintiff Suryast LLC is a limited liability company organized under the laws of the State of California with its principal place of business in California. Suryast LLC's sole member, and its managing member, is the Author, Ankit Sahni. Suryast LLC is the owner of all right, title, and interest in and to the Work, including its copyright, by written assignment from the Author, as alleged below.

10. Defendant Shira Perlmutter is named in her official capacity as the Register of Copyrights and Director of the United States Copyright Office. Under 17 U.S.C. § 701, the powers and duties of the Copyright Office are vested in the Register.

11. Defendant United States Copyright Office is a department of the Library of Congress, responsible for registering copyright claims and maintaining records of copyright ownership.

## STANDING

12. The Author created the Work, applied to register it, and was the applicant and claimant before the Copyright Office throughout the registration proceedings described below.

13. The Author and Suryast LLC entered into a written Assignment of Copyright, effective as of April 21, 2026 ("Assignment"), a true and correct copy of which is attached as Exhibit A. The Author signed the Assignment twice: individually, as assignor, and as Managing Member of Suryast LLC, as assignee. By the Assignment, the Author sold, assigned, and transferred to Suryast LLC the Work, together with all of his right, title, and interest in the Work, including all of the exclusive rights in the Work conferred by 17 U.S.C. § 106, the right to register a copyright in the Work with the Copyright Office, and the right to renew any such registration. The Author represented and warranted in the Assignment that he was the undisputed and exclusive owner of all right, title, and interest in the Work and was free to transfer those rights without limitation.

14. The Assignment is a transfer of copyright ownership made in a writing signed by the owner of the rights conveyed, as 17 U.S.C. § 204(a) requires. As a result of the Assignment, Suryast LLC is the sole and exclusive owner of the Work and of the copyright in it, and is the real party in interest in this action. The Assignment transferred ownership of the Work in substance, not merely a bare right to sue; the Author retained no exclusive right in the Work.

15. As the owner of the copyright in the Work, Suryast LLC is entitled under 17 U.S.C. § 408(a) to obtain registration of the copyright claim in the Work, and under 17 U.S.C. § 410(a) the Register must register that claim and issue a certificate of registration if the Work constitutes copyrightable subject matter and the other legal and formal requirements of Title 17 have been met. The Final Refusal determined that the Work itself is not copyrightable subject matter because it "is not the product of human authorship." That determination concerns the Work and the circumstances of its creation, not the identity of the claimant. It forecloses registration of the Work by any claimant, including Suryast LLC as the Author's successor in interest, and any new application that Suryast LLC submitted for the Work would be subject to the same Human Authorship Requirement and the same guidance that the Copyright Office applied in the Final Refusal.

16. Suryast LLC has suffered and continues to suffer concrete injury in fact as a direct and proximate result of the Copyright Office's refusal to register the Work. Because the Work is unregistered, Suryast LLC is deprived of a certificate of registration and of the benefits that federal law attaches to registration, including: (a) prima facie evidence of the validity of the copyright and of the facts stated in the certificate, which a certificate of registration made before or within five years after first publication provides under 17 U.S.C. § 410(c); (b) the availability of statutory damages and attorney's fees in an action for infringement of the Work, which 17 U.S.C. § 412 withholds for infringements that commence before the effective date of registration; and (c) a public record of Suryast LLC's ownership of the Work. The Work was first published on November 2, 2020. Had the Copyright Office registered the Work when the Author applied for registration on December 1, 2021, the registration would have been made within five years after first publication. A registration ordered by this Court will carry the evidentiary weight that 17 U.S.C. § 410(c) provides only if it bears the effective date that 17 U.S.C. § 410(d) prescribes: the date on which the Author's application, deposit, and fee were received by the Copyright Office.

17. Suryast LLC's injury is directly traceable to the Copyright Office's Final Refusal and would be redressed by an order of this Court setting aside the refusal and directing the Copyright Office to register the Work, identifying Suryast LLC as the copyright claimant.

18. Suryast LLC's interests fall within the zone of interests protected and regulated by the Copyright Act, which expressly entitles the owner of a copyright to obtain registration of it. 17 U.S.C. § 408(a). All actions taken by the Register of Copyrights under Title 17 are subject to the APA, 17 U.S.C. § 701(e), and Suryast LLC is a person adversely affected and aggrieved by, and suffering legal wrong because of, the Copyright Office's final agency action, and is entitled to judicial review under 5 U.S.C. § 702.

## FACTUAL BACKGROUND[1]

### A. <u>The Author Creates the Work</u>

[1] The factual allegations are drawn from the record before the Copyright Office.

19. The Author took the following original photograph of a sunset over a building ("Base Photo"):



20. The Author then used RAGHAV to transform the Base Photo. RAGHAV is an artificial intelligence software tool that produces an image with the same content as a user-supplied base image but in the style of a user-supplied style image, to a degree of style transfer that the user specifies.

21. The Author supplied RAGHAV with three inputs, each of which he selected: the Base Photo, as the base image; Vincent van Gogh's *The Starry Night*, as the style image; and a numerical value that he chose to set the degree to which the style would be applied to the Base Photo. The result was the Work depicted above. The Work preserves the subject matter and composition that the Author fixed in the Base Photo (a sunset, clouds, the contours of a building, and a sky occupying the upper two-thirds of the image) and renders them in the color palette, brush strokes, and curved lines characteristic of the style the Author selected, at the intensity he selected.

**B. <u>The Copyright Office Repeatedly Rejects Registration of the Work</u>**

22. On December 1, 2021, the Author applied to register the Work with the Copyright Office ("Initial Application"). The Initial Application identified the Author as the author of the "photograph" and "2-D artwork" and as the sole copyright claimant; identified RAGHAV as a co-author of the "2-D artwork," which the Author did in order to disclose RAGHAV's role in the creation of the Work; stated that the Work was completed in 2020 and first published on November 2, 2020,

dates the Copyright Office has not questioned; and included a note stating that the Work had been generated with the assistance of RAGHAV.

23. On February 28, 2022, before receiving any description of how the Work was created, the Copyright Office emailed the Author requesting an explanation of the process he used and the creative authorship he contributed. The email stated that in the Copyright Office's experience a person in the Author's position makes "copying decisions, not creative artistic decisions," that such persons are "copyists and craftsmen, not creative artists of the kind that copyright considers an author," and that the Author would have to explain why his situation did not fit that mold. On April 14, 2022, the Author submitted a seventeen-page written response describing how RAGHAV functions and the steps by which he created the Work: taking the Base Photo, selecting *The Starry Night* as the style input, and selecting the variable value determining the amount of style transfer.

24. On June 29, 2022, the Copyright Office issued a refusal to register the Work ("First Refusal"). The First Refusal stated that the Work "lacks the human authorship necessary to support a copyright claim" and that because the Work "was in part generated by a computer program, [the Copyright Office is] unable to register [the] claim." It acknowledged the Author's position that the Work contains human creative input distinct from RAGHAV's contribution, but concluded that "this human authorship cannot be distinguished or separated from the final work produced by the computer program."

25. On September 27, 2022, the Author, through counsel, submitted the Request for First Reconsideration ("First Reconsideration Request"). He detailed the process of creating the Work, including taking the Base Photo and the use of RAGHAV, explained his specific creative input into this process, and cited the legal authority for the registration. He asked the Copyright Office to amend the application to identify him as the sole author of the Work, and he asked that the registration record disclose that the Work was created with the assistance of an AI-powered tool.

26. On April 10, 2023, the Copyright Office issued another refusal to register the Work ("Second Refusal"). The Second Refusal stated that the Work is a "derivative work" of the Base Photo and that the process by which the Author created it "does not exhibit the requisite human creativity

needed to support a claim to copyright in a derivative work." It found that RAGHAV, and not the Author or any other human, was responsible for generating the Work. At the same time, the Second Refusal acknowledged that "the use of a filter may be one of many decisions involved in creating an original photograph." It declined to consider the Base Photo, or the Author's claim in the "photograph," as part of the application, on the ground that the Base Photo is a separate work, and it stated that amending the application to identify the Author as the sole author of the Work would not change the Copyright Office's conclusion.

27. On July 10, 2023, the Author submitted the Second Request for Reconsideration ("Second Reconsideration Request"). He again showed how the Work contained traditional elements of human authorship and the various elements of creative control he exercised in creation of the Work. He explained that RAGHAV functioned as an assistive tool subject to his creative decisions in selecting the Base Photo, selecting *The Starry Night* as the style image, and setting the value for the degree of style transfer; identified the human-authored elements of the Work, including its sunset, clouds, building, composition, and chosen style; explained that he took the Base Photo as a deliberate first step in his process of creating the Work, so that his creative input in the Base Photo and in the Work should be considered together; and renewed his request to amend the application to identify him as the sole author.

28. On December 11, 2023, the Copyright Office, acting through its Review Board, issued the Final Refusal, which constitutes final agency action under 37 C.F.R. § 202.5(g). The Final Refusal relied on the Copyright Office's Human Authorship Requirement, *Compendium of U.S. Copyright Office Practices* (Third) § 306, and on its published guidance regarding works containing AI-generated material, *Copyright Registration Guidance: Works Containing Material Generated by Artificial Intelligence*, 88 Fed. Reg. 16,190 (Mar. 16, 2023) ("AI Guidance"). It reaffirmed that the Copyright Office considered the Work to be a "derivative work" and concluded that "the Work is not the product of human authorship" because "the expressive elements of pictorial authorship were not provided by Mr. Sahni. … The fact that the Work contains sunset, clouds, and a building are the result of using an

AI tool that 'generate[s] an image with the same "content" as a base image, but with the "style" of [a] chosen picture.'"

29. The Final Refusal did not dispute that the Author took the Base Photo, selected the style image, and selected the value governing the degree of style transfer, or that the Work depicts the subject matter and composition of the Base Photo. It characterized those choices as an "unprotectable idea," treated the Author's selection of the style-transfer value as too trivial to be protected, and reasoned that RAGHAV, rather than the Author, determined how to render the Author's photograph in the Author's chosen style. It stated that its conclusion would be the same even if RAGHAV functioned as a filter applied to the Base Photo, because selecting the strength of a filter, "by itself," is not sufficiently creative. On that basis the Copyright Office refused to register any part of the Work, while acknowledging that the Base Photo is itself a work of authorship that the Author could separately register.

30. The Final Refusal relied on judicial authority concerning a work whose applicant represented that it had been created autonomously by an artificial intelligence system, without human creative input. The Author made no such representation. The record before the Copyright Office established that every input that determined the content, composition, and style of the Work was selected by the Author.

31. By the Assignment, effective as of April 21, 2026, the Author transferred and assigned to Suryast LLC the Work and all of his right, title, and interest in it, including the copyright, all of the exclusive rights under 17 U.S.C. § 106, and the right to register the Work with the Copyright Office. (Ex. A.)

**FIRST CAUSE OF ACTION**
**Violation of the Administrative Procedure Act**
**(Against All Defendants)**

32. Suryast LLC incorporates by reference all the allegations of the foregoing paragraphs, as though fully set forth herein.

33. The Final Refusal is final agency action within the meaning of 5 U.S.C. § 704 and 37 C.F.R. § 202.5(g), and there is no other adequate remedy in a court. As the owner of the Work, Suryast

LLC is adversely affected and aggrieved by, and has suffered legal wrong because of, the Final Refusal within the meaning of 5 U.S.C. § 702, and seeks to have it set aside.

34. The Copyright Act protects "original works of authorship fixed in any tangible medium of expression, now known or later developed," 17 U.S.C. § 102(a), including pictorial and graphic works, *id.* § 102(a)(5), and derivative works, *id.* § 103(a). When the Register determines that the material deposited "constitutes copyrightable subject matter" and that the other legal and formal requirements of Title 17 have been met, the Register "shall register the claim." *Id.* § 410(a). The Register has no authority to refuse registration on the basis of a requirement that the Copyright Act does not impose.

35. The Author exercised creative control over the Work at every step of its creation. He composed and took the Base Photo, which fixed the Work's subject matter and composition: a building, a sunset, clouds, and a sky occupying the upper two-thirds of the image, in the relative positions shown. He selected a specific style, that of Van Gogh's *The Starry Night*, which is characterized by a particular color palette, broad brush strokes, curved lines, and other distinctive features. He selected the degree to which that style would be applied. And he used RAGHAV to carry out those choices, producing a Work that retains the composition he created and adds the stylistic features he chose, at the intensity he chose.

36. These are creative choices of the kind the Copyright Act protects, and the Work is their fixed expression. The Copyright Act requires only a modicum of creativity, and it has never required that an author execute every element of a work by hand or without the aid of a tool. The Final Refusal's conclusion that the Author's choices amount to no more than an "unprotectable idea" disregards that the Work embodies not the abstract idea of a stylized photograph, but the particular expression that resulted from the Author's particular photograph, his particular choice of style, and his particular setting of the degree of stylization.

37. The Final Refusal is also inconsistent with the record on which it rests. It found that RAGHAV, rather than the Author, determined the placement, presence, and coloring of the elements of the Work, while acknowledging in the same decision that the Work contains the sunset, clouds, and

building of the Base Photo because RAGHAV generates an image with the same content as the base image the Author supplied. The placement and presence of those elements in the Work were determined by the Author when he composed the Base Photo, and the palette applied to them was determined by the style he selected.

38. The Copyright Office denied registration on the basis of its Human Authorship Requirement and AI Guidance, under which an applicant must disclaim any portion of a work that the Copyright Office deems generated by an AI tool, and under which the output of such a tool is treated as non-human expression without regard to the extent of the human author's creative control over the tool or the human author's creative contribution to the portions of the work the tool affected. As applied here, the Copyright Office treated the entirety of the Work, apart from the Base Photo that it set aside as a separate work, as AI-generated, leaving nothing to register. In effect, the Copyright Office's policy amounts to a *per se* denial of registration to any work, or portion of a work, that a human author creates using an AI tool.

39. The Copyright Office's own AI Guidance states that the inquiry is a case-by-case one that depends on how the AI tool operates and how it was used to create the work, and the Copyright Office has registered other works containing AI-generated material. The Final Refusal did not undertake that inquiry. It discounted each of the Author's choices individually, as an idea or as trivial, without considering the expression that those choices, taken together, produced, and it treated the fact that an AI tool executed the Author's choices as dispositive.

40. Even accepting the Copyright Office's characterization of the Work as a derivative work of the Base Photo, the Final Refusal cannot stand. The copyright in a derivative work extends to the material contributed by its author, 17 U.S.C. § 103(b), and the new material in the Work, its rendering in a style and at an intensity that the Author selected, is the product of the Author's creative choices. The Copyright Act does not require that an author's transformation of his own prior work be executed without the aid of a tool.

41. The Copyright Office further erred in refusing to consider the Author's claim in the "photograph," and the photographic authorship embodied and perceptible in the deposited Work, on

the ground that the Base Photo is a separate work. The Author claimed both the photograph and the two-dimensional artwork in a single application because he created the Base Photo as the first stage of creating the Work, and the Work preserves the composition, subject matter, and arrangement of elements that he fixed in the Base Photo.

42. The Copyright Office's refusal to register the Work is not supported by the Copyright Act or any other federal law, rests on a requirement that the Copyright Act does not impose, departs from the Copyright Office's own stated standards, and is contrary to the record before the agency. The Final Refusal is therefore arbitrary, capricious, an abuse of discretion, and not in accordance with law, and in excess of the Register's statutory authority, within the meaning of 5 U.S.C. § 706(2)(A) and (C).

43. The Court should hold unlawful and set aside the Final Refusal and the Copyright Office's refusal to register the Work, and should order the Copyright Office to register the Work with an effective date of registration as provided by 17 U.S.C. § 410(d).

**PRAYER FOR RELIEF**

WHEREFORE, Suryast LLC respectfully requests that this Court grant judgment in its favor and against Defendants as follows:

1. Declare, pursuant to 28 U.S.C. § 2201, that the Work constitutes copyrightable subject matter and that the Copyright Office's refusal to register it is arbitrary, capricious, an abuse of discretion, not in accordance with law, and in excess of statutory authority;
2. Hold unlawful and set aside the Copyright Office's refusal to register the Work;
3. Order the Copyright Office to register the Work in its entirety, identifying Ankit Sahni as the human author of the Work and Suryast LLC as the copyright claimant and owner, with an effective date of registration as provided by 17 U.S.C. § 410(d);
4. Award Suryast LLC its costs and reasonable attorney's fees to the extent permitted by law; and
5. Order any other and further relief, at law or in equity, which the Court determines is appropriate.

Dated: October 27, 2026

**BROWN, NERI, SMITH & KHAN LLP**

By: ______________________

Ryan Abbott, Esq.
11601 Wilshire Blvd, Ste. 2080
Los Angeles, CA 90025
Phone: (310) 593-9890
Fax: (310) 593-9980
Ryan@bnsklaw.com

*Attorneys for Plaintiff Suryast U.S. Enterprises, LLC*